IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COREY ROBERTS, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 24-CV-0556 |
| | : | |
| STEVEN ANGELUCCI, | : | |
|     Defendant. | : | |

## MEMORANDUM

HODGE, J.      APRIL 12, 2024

    Plaintiff Corey Roberts, a prisoner currently incarcerated at SCI Laurel Highlands, brings this *pro se* civil action pursuant to 42 U.S.C. § 1983, raising constitutional claims based on the conditions of his confinement while he was incarcerated at the Curran-Fromhold Correctional Facility ("CFCF").[1] Roberts has filed a Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 4) and his Prisoner Trust Fund Account Statements (ECF Nos. 6, 9). Because it appears that Roberts cannot afford to pre-pay the filing fee, the Court will grant him leave to proceed *in forma pauperis*. For the following reasons, the Court will dismiss Roberts's Amended Complaint without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and give him an opportunity to file a second amended complaint.

---

[1] Roberts initiated this action by filing a two-page letter. (ECF No. 1.) Although the letter was deficient as a formal complaint in several respects, the Clerk's Office treated the letter as a complaint and opened this civil action. In a February 13, 2024 Order, the Court directed Roberts to file a proper complaint in compliance with the Federal Rules of Civil Procedure. (ECF No 3.) Roberts returned with his Amended Complaint, which was dated March 12, 2024 and docketed by the Clerk's Office on March 13, 2024. (ECF No. 5.)

1

## I. FACTUAL ALLEGATIONS[2]

Roberts's factual allegations are brief. He names Steven Angelucci (misspelled Angilucci) as the sole Defendant, identifying him as the Warden of CFCF. (Compl. at 2-3.) Roberts avers that while he was incarcerated at CFCF, he was housed in the multi-purpose room with four other inmates from July 20, 2022 through July 30, 2022.[3] (*Id.* at 3-4.) He alleges that the multi-purpose room was a "very hostile environment" with a toilet in the corner and "no privacy, no ventilation, [and] no periodic checks," averring that the correctional officers "only came around during regular facility feedings, and inst. needs." (*Id.* at 4.) Roberts asserts that the "warden allowed this multipurpose room to be utilized." (*Id.*) He seeks monetary and punitive damages for cruel and unusual punishment and mental anguish. (*Id.* at 6.)

## II. STANDARD OF REVIEW

The Court will grant Roberts leave to proceed *in forma pauperis* because it appears he is not able to pre-pay the fees to commence this civil action.[4] Because Roberts is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Amended Complaint if, among other things, it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to

---

[2] The following allegations are taken from the Amended Complaint. The Court adopts the pagination supplied by the CM/ECF docketing system.

[3] While Roberts is not specific, a review of public records shows that he was held at CFCF as a pretrial detainee at the time of the relevant events alleged in the Complaint. *See Commonwealth v. Roberts*, CP-51-CR-0010063-2021 (C.P. Phila.). The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement, while claims by pretrial detainees are governed by the due process provision of the Fourteenth Amendment. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). Construing Roberts's allegations liberally, the Court will apply the constitutional standards applicable to pretrial detainees.

[4] However, as Roberts is currently incarcerated, he will be obligated to pay the full amount of the filing fee in installments as required by the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted), *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).

"'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Roberts is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). "This means we remain flexible, especially 'when dealing with imprisoned *pro se* litigants[.]'" *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 244). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 245). An unrepresented litigant "'cannot flout procedural rules — they must abide by the same rules that apply to all other litigants.'" *Id.*

### III. DISCUSSION

The Court understands Roberts to be pursuing claims for unconstitutional punishment based on the conditions of his confinement while he was housed as a pretrial detainee in the multi-purpose room at CFCF from July 20, 2022 through July 30, 2022. The vehicle by which

constitutional claims may be asserted in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Furthermore, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.[5] *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

As noted above, the Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees. *Hubbard*, 399 F.3d at 166. To establish a basis for a Fourteenth Amendment violation, a prisoner must allege that his conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). "Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d

---

[5] Furthermore, liability under § 1983 cannot be predicated on a *respondeat superior* basis. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)).

Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotations and alterations omitted).

In that regard, "a 'particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'" *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (quoting *Stevenson*, 495 F.3d at 68); *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017). Courts should consider the totality of the circumstances in evaluating such a claim. *Bistrian*, 696 F.3d at 373 ("In evaluating a pretrial detainee's claim of unconstitutional punishment, courts must examine the totality of the circumstances within the institution."). Furthermore, "[i]n determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion," courts are obligated to keep in mind that "such considerations are peculiarly within the province and professional expertise of corrections officials . . . ." *Stevenson*, 495 F.3d at 68 n.3.

Courts have held that housing multiple inmates in a cell or using non-traditional areas of the institution to house detainees does not alone establish a constitutional violation. *See Hubbard*, 538 F.3d at 236 & n.6 (pretrial detainees do not have a right "to be free from triple-celling or from sleeping on a mattress placed on the floor"); *id.* at 232-35 (housing of detainees in gym, weight room, and receiving area due to overcrowding, did not amount to punishment); *North v. White*, 152 F. App'x 111, 113 (3d Cir. 2005) (*per curiam*) ("Double or triple-bunking of cells, alone, is not per se unconstitutional."). Roberts has not stated a plausible constitutional violation based on his allegations that he was placed in a multi-purpose room with four other

inmates because he has not alleged that the conditions in which he was housed for approximately ten days amounted to punishment, deprived him of a basic need, or otherwise caused him objectively serious harm.[6] *See Wilson v. Seiter*, 501 U.S. 294, 305 (1991) ("Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists."); *Bell*, 441 U.S. at 542-43 (double-bunking did not violate constitutional rights of pretrial detainees when detainees had sufficient space for sleeping and use of common areas, and the average length of incarceration was 60 days); *see also Walker v. George W. Hill Corr.*, No. 18-2724, 2018 WL 3430678, at *3 (E.D. Pa. July 13, 2018) (concluding that prisoner plaintiff's claims that "he was forced to share a cell with two other individuals and that he was forced to sleep on the floor inside what was described as a boat unit" and that "his sleeping area was a very unhealthy and unsanitary space two feet from the toilet bowl" failed to state a Fourteenth Amendment claim with respect to allegations of overcrowding).

Roberts also avers that the multi-purpose room had "no ventilation." (Compl. at 4.) While the Constitution does not guarantee pretrial detainees a right to be free from all

---

[6] Roberts alleges that there was a toilet in the corner of the multi-purpose room. (Compl. at 4.) This does not state a plausible claim because courts have held that the practice of requiring inmates to eat their meals in a cell containing a toilet does not violate the Constitution. *See Detainees of Brooklyn House of Det. for Men v. Malcolm*, 520 F.2d 392, 396 n.3 (2d Cir. 1975) ("The discomfort of eating in a cell is not, of itself, an unconstitutional hardship."); *Randall v. Cnty. of Berks*, No. 14-5091, 2015 WL 5027542, at *15 (E.D. Pa. Aug. 24, 2015) ("[S]erving a pretrial detainee meals in a cell that can be eaten at his desk, even if the cell has a toilet, does not violate the Due Process Clause of the Fourteenth Amendment."); *Caldwell v. Cabarrus Cnty. Jail*, No. 12-586, 2012 WL 2366451, at *2 (M.D.N.C. June 21, 2012) ("[H]aving to eat in a cell with an unflushed toilet" does not violate the Constitution), *report and recommendation adopted*, 2013 WL 1344452 (M.D.N.C. Apr. 2, 2013); *Mestre v. Wagner*, No. 11-2191, 2012 WL 299652, at *4 & *4 n.4 (E.D. Pa. Feb. 1, 2012) ("[A]s other courts have held, we conclude that serving a pretrial detainee meals in a cell that has a toilet does not violate the Due Process Clause of the Fourteenth Amendment.").

discomfort, *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), courts have held that detainees have a right to adequate ventilation and to be free from extreme hot and cold temperatures. *See, e.g., Alpheaus v. Camden Cnty. Corr. Facility*, No. 17-180, 2017 WL 2363001, at *13 (D.N.J. May 31, 2017). However, Roberts's conclusory allegation that there was no ventilation, with no further elaboration about the actual temperature conditions, is insufficient to state a plausible claim. The mere exposure to a lack of ventilation with, as here, no claim that it caused any significant harm, does not rise to the level of an objectively serious deprivation.

The Court cannot say, however, that Roberts can never state a plausible claim based on a lack of ventilation during his incarceration in the multi-purpose room at CFCF. *See, e.g., David v. Yates*, No. 15-6943, 2016 WL 5508809, at *7 (D.N.J. Sept. 27, 2016) (finding that a detainee's cold air claim stated a constitutional violation under the Fourteenth Amendment). *But see also Stokelin v. A.C.J.F. Warden*, No. 17-3484, 2018 WL 4357482, at *4 (D.N.J. Sept. 13, 2018) (holding that allegation that ventilation system was "no good" failed to state a claim where there was no allegation of any health problem as a result of the ventilation system); *Alpheaus*, 2017 WL 2363001, at *13 (dismissing with leave to amend allegation that summer heat conditions violated detainee's rights under objective component). Accordingly, Roberts will be granted an opportunity to file a second amended complaint.

IV.   **CONCLUSION**

For the foregoing reasons, the Court will grant Roberts leave to proceed *in forma pauperis* and dismiss his Amended Complaint without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. The Court will dismiss the Amended Complaint without prejudice to Roberts filing a second amended complaint so he can "flesh out [his] allegations by . . . explaining in a [second] amended complaint the 'who, what, where, when and

7

why' of [his] claim." *See Gambrell v. S. Brunswick Bd. of Educ.*, No. 18-16359, 2019 WL 5212964, at *4 (D.N.J. Oct. 16, 2019).

An appropriate Order follows, which provides further instruction as to amendment.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

**KELLEY BRISBON HODGE, J.**